Knoll Lowney
Meredith Crafton
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| PUGETSOUNDKEEPER ALLIANCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| SAMSON TUG AND BARGE CO. INC. | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

## I.    INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365.  Plaintiff Puget Soundkeeper Alliance ("Soundkeeper") seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees for Defendant Samson Tug and Barge Co., Inc.'s ("Samson") repeated and ongoing violations of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, and the terms and conditions of Samson's National Pollutant Discharge Elimination System ("NPDES") permit authorizing discharges of pollutants from Defendant's Seattle, Washington, facility to navigable waters.

COMPLAINT - 1

## II.    JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over Plaintiff's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a).  Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d) authorize the relief Plaintiff requests.

3.      Under Section 505 (b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff notified Defendant of Defendant's violations of the CWA and of Plaintiff's intent to sue under the CWA by letter dated and postmarked June 3, 2016 and received by June 9, 2016 ("Notice Letter").  A copy of the Notice Letter is attached to this complaint as Exhibit 1.  Plaintiff notified Defendant's Registered Agent, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE") of its intent to sue Defendant by mailing copies of the Notice Letter to these officials on June 3, 2016.

4.      More than sixty days have passed since the notice was served and the violations complained of in the Notice Letter are continuing or are reasonably likely to occur.  Defendant is in violation of Samson's NPDES permit and the CWA.  Neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

5.      The source of the violations complained of is located in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

## III.    PARTIES

6.      Plaintiff, Puget Soundkeeper Alliance ("Soundkeeper"), is suing on behalf of itself and its member(s).  Soundkeeper is a non-profit corporation registered in the State of

COMPLAINT - 2

Washington.  Soundkeeper is a membership organization and has at least one member who is injured by Defendant's violations.  Soundkeeper is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters, by tracking down and stopping toxic pollution entering its waters.

7.  Plaintiff has representational standing to bring this action.  Soundkeeper's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Defendant's facility, on aquatic species and wildlife that Plaintiff's members observe, study, and enjoy. The recreational, scientific, economic, aesthetic and/or health interests of Soundkeeper and its member(s) have been, are being, and will be adversely affected by Defendant's violations of the CWA.  The relief sought in this lawsuit can redress the injuries to these interests.

8.  Plaintiff has organizational standing to bring this action.  Plaintiff has been actively engaged in a variety of educational, advocacy, and restoration efforts to improve water quality and to address sources of water quality degradation in the waters of western Washington and Puget Sound.  Defendant has failed to fulfill monitoring, recordkeeping, reporting and planning requirements, among others, necessary for compliance with its NPDES permit and the CWA.  As a result, Plaintiff is deprived of information necessary to properly serve its members by providing information and taking appropriate action. Plaintiff's efforts to educate and advocate for greater environmental protection, and to ensure the success of environmental restoration projects implemented for the benefit of its members are also precluded. Finally, Plaintiff and the public are deprived of information that influences members of the public to become members of Soundkeeper, thereby reducing Soundkeeper's membership numbers.  Thus,

COMPLAINT - 3

Plaintiff's organizational interests have been adversely affected by Defendant's violations. These injuries are fairly traceable to Defendant's violations and redressable by the Court.

9.      Defendant, Samson Tug and Barge Co, Inc. ("Samson") is a corporation incorporated in Alaska and authorized to conduct business under the laws of the State of Washington. Samson is an interstate shipping company that operates a facility located at or about 7553 Detroit Ave SW, Seattle WA 98108, including any contiguous or adjacent properties owned or operated by Defendant (the "facility").

## IV.      LEGAL BACKGROUND

10.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA.  Section 301(a) prohibits, inter alia, such discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

11.     The State of Washington has established a federally approved state NPDES program administered by the WDOE.  Wash. Rev. Code § 90.48.260; Wash. Admin. Code Ch. 173-220.  This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

12.     The WDOE has repeatedly issued the Industrial Stormwater General Permit ("Permit") under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), most recently on October 21, 2009, effective January 1, 2010, modified May 16, 2012 (the "2010 Permit"), and on December 3, 2014, effective January 2, 2015 (the "2015 Permit").  The 2010 Permit and the 2015 Permit (collectively, "the Permits") contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a

COMPLAINT - 4

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

pollutant under the CWA, and other pollutants contained in the stormwater to the waters of the State subject to certain terms and conditions.

13.     The Permits impose certain terms and conditions on those covered thereby, including monitoring and sampling of discharges, reporting and recordkeeping requirements, as well as restrictions on the quality of stormwater discharges.  To reduce and eliminate pollutant concentrations in stormwater discharges, the Permits require, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges.  The specific terms and conditions of the Permits are described in detail in the Notice Letter and incorporated by reference herein.  See Exhibit 1.

## V.     FACTS

14.     Pursuant to Condition S2 of the Permits, Samson filed with the WDOE an Application for General Permit to Discharge Stormwater Associated with Industrial Activity. WDOE granted Defendant coverage for operations of Samson Tug & Barge Co under the General Permit for Defendant's facility under Permit Number WAR011800.  WDOE previously granted Defendant coverage under an earlier version of the General Permit for Defendant's facility under Permit Number SO3011800.

15.     Defendant's facility is engaged in industrial activity and discharges stormwater and other pollutants to a surface waterbody and wetland that drains into the Duwamish Waterway.

16.     Discharges from Defendant's facility contribute to the polluted conditions of the waters of the State, including the Duwamish Waterway and Puget Sound.  Discharges from

COMPLAINT - 5

Defendant's facility contribute to the ecological impacts that result from the polluted state of these waters and to Plaintiff's and their members' injuries resulting therefrom.

17.     The vicinity of the facility and the receiving waters are used by the citizens of Washington and visitors, as well as at least one of Plaintiff's members, for recreational activities, including boating, fishing, nature watching and sightseeing.  Plaintiff's member(s) also derive(s) aesthetic benefits from the receiving waters.  Plaintiff's and its members' enjoyment of these activities and waters is diminished by the polluted state of the receiving waters and by Defendant's contributions to such polluted state.

18.     Defendant has violated the Permits and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants in violation of an NPDES Permit. Defendant's violations of the Permits and the CWA are set forth in full in sections I through VII of the Notice Letter, attached hereto as Exhibit 1 and hereby incorporated by reference.  In particular and among the other violations described in the Notice Letter, Defendant has failed sample the discharge that accurately characterizes stormwater runoff from the facility, implement best management practices to control stormwater quality, limit illicit discharges, and properly complete corrective actions as required by the Permits.

19.     Defendant has violated the Permits and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants not in compliance with an NPDES Permit. Defendant has discharged stormwater containing levels of pollutants that exceed the benchmark values established by the Permits, including on the days on which Defendant collected samples with the results identified in bold in Tables 1 and 2 below.

20.     The stormwater samples identified in Tables 1 and 2 reflect the stormwater monitoring results that Defendant has submitted to WDOE.

COMPLAINT - 6

21.     Discharges of stormwater and/or wastewater from the facility cause and/or contribute to violations of water quality standards for zinc, copper, and turbidity and have occurred during the last five years and continue to occur each and every day on which there was 0.1 inch or more of precipitation.

22.     Defendant's stormwater discharges are causing or contributing to violations of water quality standards and therefore violate the Permits.  Defendant's water quality standard violations are set forth in section I of the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference.

| TABLE 1: DISCHARGE MONITORING REPORT ("DMR") DATA FOR SAMSON DETROIT AVE FACILITY OUTFALL 1 (SW 1) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Quarter in which sample collected | Turbidity (Benchmark 25 NTU) | pH (Benchmark 5-9 su) | Zinc (Benchmark 117 µg/L) | Oil Sheen (Y/N) | Copper (Benchmark 14 µg/L) | Diesel NWTPHDx (Benchmark <= 10 mg/L) | Notes |
| 1Q 2010 | | | | | | | ND |
| 2Q 2010 | | | | | | | ND |
| 3Q2010 | | | | | | | ND |
| 4Q 2010 | | | | | | | No DMR |
| 1Q 2011 | | | | | | | No DMR |
| 2Q 2011 | **1293.4** | 7.5 | **2310** | N | **723** | | |
| 3Q 2011 | | | | | | | ND |
| 4Q 2011 | | | | | | | ND |
| 1Q 2012 | | | | | | | ND |
| 2Q 2012 | | | | | | | No DMR |
| 3Q 2012 | | | | | | | ND |
| 4Q 2012 | | | | | | | ND |
| 1Q 2013 | | | | | | | ND |
| 2Q 2013 | | | | | | | ND |
| 3Q 2013 | | | | | | | ND |
| 4Q 2013 | | | | | | | ND |
| 1Q 2014 | | | | | | | ND |
| 2Q 2014 | | | | | | | ND |
| 3Q 2014 | **453** | 7.9 | **981** | N | **140** | | |
| 4Q 2014 | **391** | 8.2 | **1490** | N | **259** | | |
| 1Q 2015 | **1230** | 7.3 | **1010** | N | **354** | .168 | |

COMPLAINT - 7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2Q 2015 | | | | | | | No DMR |
| 3Q2015 | **318** | 8.1 | **908** | N | **402** | .439 | |
| 4Q2015 | **553** | 7.6 | **535** | N | **188** | .384 | |
| 1Q2016 | **522** | 8.6 | **564** | N | **274** | .301 | |
| 2Q2016 | **105** | 8.6 | **315** | N | **77.4** | .181 | |

TABLE 1 Key: **Bold** = benchmark exceedances; "ND" = Reported No Discharge; "NC" = Analysis not conducted; "No DMR"= No DMR submitted to WDOE.

| TABLE 2: DISCHARGE MONITORING REPORT ("DMR") DATA FOR SAMSON DETROIT AVE FACILITY OUTFALL 2 (SW 2) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Quarter in which sample collected | Turbidity (Benchmark 25 NTU) | pH (Benchmark 5-9 su) | Zinc (Benchmark 117 µg/L) | Oil Sheen (Y/N) | Copper (Benchmark 14 µg/L) | Diesel NWTPHDx (Benchmark <= 10 mg/L) | Notes |
| 1Q 2010 | | | | | | | No DMR |
| 2Q 2010 | | | | | | | No DMR |
| 3Q2010 | | | | | | | No DMR |
| 4Q 2010 | **106.7** | 6.5 | **214** | N | **44.4** | | |
| 1Q 2011 | **1029.4** | 6.5 | **669** | N | **143** | | |
| 2Q 2011 | **842.8** | | **650** | | **116** | | |
| 3Q 2011 | | | | | | | No DMR |
| 4Q 2011 | | | | | | | No DMR |
| 1Q 2012 | | | | | | | No DMR |
| 2Q 2012 | | | | | | | No DMR |
| 3Q 2012 | | | | | | | No DMR |
| 4Q 2012 | | | | | | | No DMR |
| 1Q 2013 | | | | | | | No DMR |
| 2Q 2013 | | | | | | | No DMR |
| 3Q 2013 | | | | | | | No DMR |
| 4Q 2013 | | | | | | | No DMR |
| 1Q 2014 | | | | | | | No DMR |
| 2Q 2014 | | | | | | | No DMR |
| 3Q 2014 | | | | | | | No DMR |
| 4Q 2014 | | | | | | | No DMR |
| 1Q 2015 | | | | | | | No DMR |
| 2Q 2015 | | | | | | | No DMR |
| 3Q2015 | | | | | | | No DMR |
| 4Q2015 | | | | | | | No DMR |
| 1Q2016 | | | | | | | No DMR |
| 2Q2016 | | | | | | | No DMR |

TABLE 2 Key: **Bold** = benchmark exceedances; "ND" = Reported No Discharge; "NC" = Analysis not conducted; "No DMR"= No DMR submitted to WDOE.

COMPLAINT - 8

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

23.     Defendant failed to provide Plaintiff with access to a copy of Defendant's most recent stormwater pollution prevention plan (SWPPP) as requested pursuant to Condition S9.F of the 2015 Permit and noted in Section VIII of the notice letter attached hereto as <u>Exhibit 1</u> and hereby incorporated by reference. This constitutes an ongoing violation of the Permit.

24.     On information and belief, Plaintiff's SWPPP fails to meet the minimum requirements set forth in Condition S3 of the Permits and referenced in section II of the Notice Letter attached hereto as <u>Exhibit 1</u> and hereby incorporated by reference.

25.     Defendant has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, is not fully implemented, and has not been updated as necessary.

26.     Condition S4.B of the Permits requires Defendant to collect a sample of its stormwater discharge once during every calendar quarter.  Conditions S3.B.5.b and S4.B.2.c of the Permits require Samson to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled.

27.     Defendant has violated the monitoring and reporting requirements in the Permits as outlined in section III of the notice letter attached hereto as <u>Exhibit 1</u> and are incorporated herein by this reference.   Defendant has failed to collect stormwater samples and/or submit discharge monitoring reports during all quarters as required by the Permits.

28.     Condition S7.A of the Permits requires Defendant to conduct monthly visual inspections at the facility by qualified personnel.  Samson is in violation of these requirements because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists for

COMPLAINT - 9

each visual monitoring and inspection, and failed to make the requisite certifications and summaries for each visual monitoring and inspection.

29.     Defendant did not conduct and/or complete the corrective action responses as required by the Permits.  These requirements of the Permits and Defendant's violations thereof are described in section IV of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

30.     Condition S8.B of the Permits require a permittee to undertake specified actions called "Level 1 Corrective Actions" each time quarterly stormwater sample results exceed an applicable benchmark valued identified in Condition S5 of the Permits.  Condition S8.A of the 2015 Permit requires that Defendant implement any Level 1 corrective action required by the 2010 Permit.

31.     Defendant triggered Level 1 corrective action requirements each and every time quarterly stormwater sample results exceeded an applicable benchmark value or were outside the benchmark range for pH including those exceedances identified in Tables 1 and 2 above.  Defendant violated the requirements of the Permits by failing to conduct Level 1 corrective actions in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report, when it exceeded benchmarks.

32.     Condition S8.C of the Permits requires Defendant to take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.  Condition S8.A of the 2015 Permit requires that Defendant implement any Level Two Corrective Action required by the 2010 Permit.

COMPLAINT - 10

33.     Defendant triggered Level 2 corrective action requirements each and every time quarterly stormwater sample results exceeded an applicable benchmark value or were outside the benchmark range for pH for any two quarters during a calendar year. Defendant failed to conduct Level 2 corrective actions in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs to ensure that all points of discharge from the facility meet benchmarks (not just the sampled point of discharge), including additional structural source control BMPs, and the required summarization in the annual report.  These violations include, but are not limited to, Defendant's failure to fulfill these obligations for turbidity, zinc, and copper triggered by its stormwater sampling during the calendar year of 2011 and every year since.

34.     Condition S8.D of the Permits requires Defendant take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.  Condition S8.A of the 2015 Permit requires that Defendant implement any Level Three Corrective Action required by the 2010 Permit.

35.     Defendant triggered Level 3 corrective action requirements every time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year.   Defendant has violated the permit by failing to conduct Level Three Corrective Actions in accordance with permit conditions, including 1) review, revision and certification of the SWPPP; 2) implementation of additional BMPs to ensure that all points of discharge from the facility (not just the sampled point of discharge) meet benchmarks; 3) submission of an engineering report, plans, specifications, and an operations and maintenance plan prior to construction/installation, and 4)

COMPLAINT - 11

summarization in the annual report each time during the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year.  As indicated in Tables 1 and 2 above, these violations include, but are not limited to, Defendant's failure to fulfill these obligations for turbidity, zinc, and copper triggered by its stormwater sampling during the calendar year of 2015.  Based on Defendant's consistent failure to meet benchmarks, Defendant would have exceeded benchmarks and triggered L3 corrective actions much earlier had Defendant monitored as required between 2012 and 2014. On June 24, 2016, WDOE granted Defendant a conditional extension for the completion of its Level 3 corrective action requirements. This conditional extension gave Defendant until September 30, 2017 to have treatment installed and operational subject to certain conditions. Defendant's stormwater discharge continues to significantly exceed benchmark, and defendant has not complied with conditions set forth in the Administrative Order, including but not limited to failing to submit to Ecology a plan for track-out source control and interim stormwater treatment by July 31, 2016. Defendant has failed to comply with conditions of the Administrative Order and their Level 3 corrective action obligations are ongoing.

36.     Condition S9.B of the Permits requires Defendant to submit an accurate and complete annual report to WDOE no later than May 15th of each year that includes specific information.  Defendant has violated this condition by failing to include all of the required information in the annual report it submitted for 2010, 2011, 2012, 2013, and 2015 and by failing to submit an Annual Report for 2014. These reporting requirements and violations are described in section V of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

COMPLAINT - 12

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

37.     Defendant has violated and continues to violate Condition S5.E. of the Permits which prohibits illicit discharges and the discharge of process wastewater.  These violations are described in section VII of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

38.     Appendix 2 of the Permits defines "illicit discharges" to include "any *discharge that is not composed entirely of stormwater* except (1) discharges authorized pursuant to a separate NPDES permit, or (2) conditionally authorized non-stormwater discharge identified in Condition S5.D."  Defendant has violated and continue to violate these conditions by discharging from the facility pollutants other than those contained in and carried by its industrial stormwater. This includes, but is not limited to, track-out from vehicles leaving the site and discharges of wash water from the wheel wash and/or other equipment washing areas as well as discharges of non-stormwater pollutants from the facility.

39.     A penalty should be imposed against Defendant pursuant to the penalty factors set forth in 33 U.S.C. § 1319(d).

40.     Defendant's violations of the CWA degrade the environment and the water quality of the receiving water bodies.

41.     Defendant has benefited economically as a consequence of their violations and their failure to timely implement improvements at the facility.

### VI.     CAUSE OF ACTION

42.     The preceding paragraphs are incorporated herein.

43.     Defendant's violations of Samson's NPDES permit described herein and in the Notice Letter constitute violations of sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§

COMPLAINT - 13

1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as defined by section 505, 33 U.S.C. § 1365.

44.    On information and belief, violations committed by Defendant are ongoing or are reasonably likely to continue to occur.  Any and all additional violations of the Permits and the CWA which occur after those described in Plaintiff's Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

45.    Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendant is likely to continue to violate the General Permit and the CWA to the further injury of the Plaintiff, its member(s) and others.

46.    A copy of this Complaint was served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## VII.    RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A.    Issue a declaratory judgment that Defendant has violated and continues to be in violation of the Permits and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342;

B.    Enjoin Defendant from operating the facility in a manner that results in further violations of the Permits or the Clean Water Act;

C.    Order Defendant to immediately implement a Storm Water Pollution Prevention Plan that is in compliance with the Permits, and to provide Plaintiff with a copy of this Plan, and to take other necessary actions to bring them into compliance with the Clean Water Act;

D.    Order Defendant to allow Plaintiff to participate in the development and implementation of Defendant's Storm Water Pollution Prevention Plan;

COMPLAINT - 14

E.     Order Defendant to provide Plaintiff, for a period beginning on the date of the Court's Order and running for one year after Defendant achieve compliance with all of the conditions of the Permits, with copies of all reports and other documents which Defendant submits to the USEPA or to the WDOE regarding Defendant's coverage under the Permits at the time it is submitted to these authorities;

F.     Order Defendant to take specific actions to remediate the environmental harm caused by its violations;

G.     Order Defendant to pay civil penalties of $37,500.00 per day of violation for each violation committed by Defendant through November 2, 2015 and $51,570 per day of violation for each violation committed by Defendant after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

H.     Award Plaintiff their litigation expenses, including reasonable attorneys' and expert witnesses' fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

I.     Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 11th day of August, 2016.

SMITH & LOWNEY, PLLC

By:     _s/ Meredith A. Crafton_
        Meredith A. Crafton, WSBA #46558

By:     _s/ Knoll Lowney_
        Knoll Lowney, WSBA # 23457
        Attorneys for Plaintiff
        2317 E. John St.
        Seattle, WA 98112
        Tel: (206) 860-2883
        Fax: (206) 860-4187
        E-mail: knoll@igc.org, meredithc@igc.org

COMPLAINT - 15

**EXHIBIT 1**

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883, FAX (206) 860-4187

June 3, 2016

**Via Certified Mail - Return Receipt Requested**
Managing Agent
Samson Tug and Barge
7553 Detroit Ave SW
Seattle WA 98108

Kirk Miles
Samson Tug and Barge Company Inc
6361 1st Ave S
Seattle WA 98108-3228

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
          REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION
          PLAN**

Dear Managing Agent:

　　　We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson Street, Suite 107, Seattle, WA  98109, (206) 297-7002.  Any response or correspondence related to this matter should be directed to Smith & Lowney at the letterhead address.  This letter is to provide you with sixty days notice of Soundkeeper's intent to file a citizen suit against Samson Tug and Barge Company, Inc. ("Samson") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below.  This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Samson's National Pollution Discharge Elimination System ("NPDES") permit.

　　　Samson was granted coverage for its Detroit Ave SW facility effective September 25, 2009, under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") on August 21, 2002, effective September 20, 2002, modified on December 1, 2004, reissued on August 15, 2007, effective September 15, 2007, reissued again on October 15, 2008, effective November 15, 2008, and remaining effective through December 31, 2009, under NPDES permit No. SO3011800 (the "2002 Permit").  Samson was granted coverage under the subsequent iteration of the Washington ISGP issued by Ecology on October 21, 2009, effective January 1, 2010, modified May 16, 2012, effective July 1, 2012, and remaining effective through January 1, 2015, under NPDES Permit No. WAR011800 (the "2010 Permit").  Ecology granted coverage under the current iteration of the ISGP, issued by Ecology on December 3, 2014, effective January 2, 2015, and set to expire on December 31, 2019, (the "2015 Permit") and maintains the same permit number, WAR011800.

Samson has violated and continues to violate the terms and conditions of the 2010 Permit and 2015 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility, Samson Tug and Barge Co and Duwamish Marine Center located at or near 7553 Detroit Ave SW, Seattle WA 98108 (the "Facility"). The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Samson.

## I.      COMPLIANCE WITH STANDARDS.

### A.  Violations of Water Quality Standards.

Condition S10.A of the Permits prohibit discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water. In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses. For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric water quality standards. WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter."). Narrative water quality standards provide legal mandates that supplement the numeric standards. Furthermore, narrative water quality standards apply with equal force, even when Ecology has established numeric water quality standards. Specifically, Condition S10.A of the Permits require Samson's discharges not cause or contribute to violations of Washington State's water quality standards.

Samson discharges stormwater a surface waterbody and wetland that drains into the Duwamish Waterway. Samson discharges stormwater that contains elevated levels of copper, zinc, and turbidity as indicated in the tables of discharge monitoring data below. Further, the data provided in the tables below represent samples collected from only one of Samson's discharge points. Discharges of stormwater and/or wastewater from the facility cause and/or contribute to violations of water quality standards for zinc, copper and turbidity and have occurred each and every day during the last five years on which there was 0.1 inch or more of precipitation, and continue to occur. These water quality standards include those set forth in WAC 173-201A-200(1)(e), -240, and -260(2). Precipitation data from the last five years are appended to this notice of intent to sue and identify days when precipitation met or exceed 0.1 inches per day.

| | TABLE 1: DISCHARGE MONITORING REPORT ("DMR") DATA FOR SAMSON DETROIT AVE FACILITY OUTFALL 1 (SW 1) | | | | | | |
|---|---|---|---|---|---|---|---|
| Quarter in which sample collected | Turbidity (Benchmark 25 NTU) | pH (Benchmark 5-9 su) | Zinc (Benchmark 117 µg/L) | Oil Sheen (Y/N) | Copper (Benchmark 14 µg/L) | Diesel NWTPHDx (Benchmark <= 10 mg/L) | Notes |
| 1Q 2010 | | | | | | | ND |
| 2Q 2010 | | | | | | | ND |
| 3Q2010 | | | | | | | ND |
| 4Q 2010 | | | | | | | No DMR |
| 1Q 2011 | | | | | | | No DMR |
| 2Q 2011 | **1293.4** | 7.5 | **2310** | N | **723** | | |
| 3Q 2011 | | | | | | | ND |
| 4Q 2011 | | | | | | | ND |
| 1Q 2012 | | | | | | | ND |
| 2Q 2012 | | | | | | | No DMR |
| 3Q 2012 | | | | | | | ND |
| 4Q 2012 | | | | | | | ND |
| 1Q 2013 | | | | | | | ND |
| 2Q 2013 | | | | | | | ND |
| 3Q 2013 | | | | | | | ND |
| 4Q 2013 | | | | | | | ND |
| 1Q 2014 | | | | | | | ND |
| 2Q 2014 | | | | | | | ND |
| 3Q 2014 | **453** | 7.9 | **981** | N | **140** | | |
| 4Q 2014 | **391** | 8.2 | **1490** | N | **259** | | |
| 1Q 2015 | **1230** | 7.3 | **1010** | N | **354** | .168 | |
| 2Q 2015 | | | | | | | No DMR |
| 3Q2015 | **318** | 8.1 | **908** | N | **402** | .439 | |

Key: Bold = benchmark exceedances; "ND" = Reported No Discharge; "NC" = Analysis not conducted.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **TABLE 2:** **DISCHARGE MONITORING REPORT ("DMR") DATA** **FOR SAMSON DETROIT AVE FACILITY** **OUTFALL 2 (SW 2)** | | | | | | |
| Quarter in which sample collected | Turbidity (Benchmark 25 NTU) | pH (Benchmark 5-9 su) | Zinc (Benchmark 117 µg/L) | Oil Sheen (Y/N) | Copper (Benchmark 14 µg/L) | Diesel NWTPHDx (Benchmark <= 10 mg/L) | Notes |
| 1Q 2010 | | | | | | | No DMR |
| 2Q 2010 | | | | | | | No DMR |
| 3Q2010 | | | | | | | No DMR |
| 4Q 2010 | **106.7** | 6.5 | **214** | N | **44.4** | | |
| 1Q 2011 | **1029.4** | 6.5 | **669** | N | **143** | | |
| 2Q 2011 | **842.8** | | **650** | | **116** | | |
| 3Q 2011 | | | | | | | No DMR |
| 4Q 2011 | | | | | | | No DMR |
| 1Q 2012 | | | | | | | No DMR |
| 2Q 2012 | | | | | | | No DMR |
| 3Q 2012 | | | | | | | No DMR |
| 4Q 2012 | | | | | | | No DMR |
| 1Q 2013 | | | | | | | No DMR |
| 2Q 2013 | | | | | | | No DMR |
| 3Q 2013 | | | | | | | No DMR |
| 4Q 2013 | | | | | | | No DMR |
| 1Q 2014 | | | | | | | No DMR |
| 2Q 2014 | | | | | | | No DMR |
| 3Q 2014 | | | | | | | No DMR |
| 4Q 2014 | | | | | | | No DMR |
| 1Q 2015 | | | | | | | No DMR |
| 2Q 2015 | | | | | | | No DMR |
| 3Q2015 | | | | | | | No DMR |

Key: Bold = benchmark exceedances; "ND" = Reported No Discharge; "NC" = Analysis not conducted.

## B.  Compliance with Standards.

Condition S10.C of the Permits requires Samson to apply all known and reasonable methods of prevention, control and treatment ("AKART") to all discharges, including preparing and implementing an adequate SWPPP and best management practices ("BMPs"). Samson has violated and continues to violate these conditions by failing to apply AKART to its discharges by, among other things, failing to implement an adequate SWPPP and BMPs as evidenced by the elevated levels of pollutants in its discharge. *See* Tables 1 and 2; Section II. These violations have occurred on each and every day for the previous five years and continue to occur every day.

Condition S1.A of the Permits require that all discharges and activities authorized be consistent with the terms and conditions of the permit.  Samson has violated this condition by discharging and acting inconsistent with the conditions of the Permits as described in this Notice of Intent to Sue.

## II.        STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS.

Samson has not developed and implemented a SWPPP that complies with the requirements of the Permits.  In the following section, upon information and belief, Soundkeeper asserts that the SWPPP and its implementation violate the Permits as follows.

Condition S3.A.1 of the Permits require Samson to develop and implement a SWPPP as specified in these permits.  Condition S3.A.2 of the Permits require the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards.  On information and belief, Samson has violated these requirements of the Permits each and every day during the last five years and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART and BMPs necessary to comply with state water quality standards.

Condition S3.A of the Permits require Samson to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions.  On information and belief, Samson has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, is not fully implemented, and has not been updated as necessary.

The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs.  Condition S3.B.4 of the Permits requires that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater.  Condition S3.B.4 of the 2015 Permit requires that the SWPPP detail how and where the selected BMPs will be implemented.  Condition S3.A.3 of the Permits requires that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs.  Samson's SWPPP does not comply with these requirements because it does not adequately describe and explain in detail the BMPs selected, does not include BMPs consistent with approved stormwater technical manuals, and does not include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

Samson's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment.  The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, the regular business hours, and the seasonal variations in business hours or in industrial activities.

Samson's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

Samson's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants.  The SWPPP does not identify all areas associated with loading and unloading of dry bulk materials or liquids, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these permit conditions.

Samson's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials.  The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for each material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required.  The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

Samson's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance and modification.

Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement certain mandatory BMPs unless site conditions render the BMP unnecessary, infeasible, or an alternative and equally effective BMP are provided.  Samson is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

Samson's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good

housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage and treatment facilities, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, including identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Samson will comply with signature and record retention requirements, certification of compliance with the SWPPP and Permit, and all inspection reports completed by Samson).

Samson's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

Samson's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff. Samson's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

Samson's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

Samson's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that identifies points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations, documents why each discharge point is not sampled, identifies each sampling point by its unique identifying number, identifies staff responsible for conducting stormwater sampling, specifies procedures for sampling collection and handling, specifies procedures for sending samples to the a laboratory, identifies parameters for analysis, holding times and preservatives, laboratory quantization levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

### III.    MONITORING AND REPORTING VIOLATIONS.

#### A.    Failure to Collect Quarterly Samples.

Condition S4.B of the Permits require Samson to collect a sample of its stormwater discharge once during every calendar quarter.  Conditions S3.B.5.b and S4.B.2.c of the Permits require Samson to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled.  Discharge points may include, but are not limited to drains, piers, docks, loading areas, and fueling areas where industrial activities occur.  Conditions S3.B.5.b and S4.B.2.c set forth sample collection criteria, but require the collection of a sample even if the criteria cannot be met.

Samson violated these requirements by failing to collect stormwater samples at any one of its discharge points during the following quarters:

1st Quarter 2010
2nd Quarter 2010
3rd Quarter 2010
4th Quarter 2010
1st Quarter 2011
3rd Quarter 2011
4th Quarter 2011
1st Quarter 2012
2nd Quarter 2012
3rd Quarter 2012
4th Quarter 2012
1st Quarter 2013
2nd Quarter 2013
3rd Quarter 2013
4th Quarter 2013
1st Quarter 2014
2nd Quarter 2014
3rd Quarter 2014
4th Quarter 2014
1st Quarter 2015
2nd Quarter 2015
3rd Quarter 2015
4th Quarter 2015
1st Quarter 2016

These violations have occurred and continue to occur each and every quarter during the last five years that Samson was and is required to sample its stormwater discharges, including the quarters in which it collected stormwater discharge samples from some, but not all, points of discharge.  These violations will continue until Samson commences monitoring all distinct points of discharge and taking representative samples.

**B.     Failure to Analyze Quarterly Samples.**

Conditions S5.A.1 and S5.B.1 of the Permits requires Samson to analyze stormwater samples collected quarterly for turbidity, pH, total copper, total zinc, oil sheen, and petroleum hydrocarbons (NWTPHDx).

Samson violated these conditions by failing to analyze stormwater samples from each distinct discharge point for any of the required parameters during the following quarters as further specified in tables 1 and 2 above:

1st Quarter 2010
2nd Quarter 2010
3rd Quarter 2010
4th Quarter 2010
1st Quarter 2011
3rd Quarter 2011
4th Quarter 2011
1st Quarter 2012
2nd Quarter 2012
3rd Quarter 2012
4th Quarter 2012
1st Quarter 2013
2nd Quarter 2013
3rd Quarter 2013
4th Quarter 2013
1st Quarter 2014
2nd Quarter 2014
3rd Quarter 2014
4th Quarter 2014
1st Quarter 2015
2nd Quarter 2015
3rd Quarter 2015
4th Quarter 2015
1st Quarter 2016

**C.     Failure to Timely Submit Discharge Monitoring Reports.**

Condition S9.A of the Permits require Samson to use DMR forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology.  For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period.  Samson has violated these conditions by failing to timely submit a DMR within the time prescribed for the following quarters:

1st Quarter 2010
2nd Quarter 2010
3rd Quarter 2010

4th Quarter 2010
1st Quarter 2011
3rd Quarter 2011
4th Quarter 2011
1st Quarter 2012
2nd Quarter 2012
3rd Quarter 2012
4th Quarter 2012
1st Quarter 2013
2nd Quarter 2013
3rd Quarter 2013
4th Quarter 2013
1st Quarter 2014
2nd Quarter 2014
3rd Quarter 2014
4th Quarter 2014
1st Quarter 2015
2nd Quarter 2015
3rd Quarter 2015
4th Quarter 2015
1st Quarter 2016

### D.     Failure to Comply with Visual Monitoring Requirements.

Condition S7.A of the Permits requires that monthly visual inspections be conducted at the facility by qualified personnel.  Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed).

Condition S7.C of the Permits requires that Samson record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required.  The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that Samson plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

Samson is in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists for each visual monitoring and inspection, and failed to make the requisite certifications and summaries for each visual monitoring and inspection.

## IV.   CORRECTIVE ACTION VIOLATIONS.

### A.   Violations of the Level One Requirements of the Permits.

Condition S8.B of the Permits requires Samson take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.  Condition S8.A of the 2015 Permit requires that Samson implement any Level One Corrective Action required by the 2010 Permit.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires Samson: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the 2010 Permit and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the 2010 Permit; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits.  Condition S8.B.4 of the Permits requires that Samson implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A and Tables 2 and 3 of the Permits establish the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 µg/L; total zinc 117 µg/L; and petroleum hydrocarbons (diesel fraction NWTPHDx) <=10 mg/L.

Samson has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time since January 1, 2010, that quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed in Tables 1 and 2 in Section I.A. of this letter.

These benchmark excursions are based upon information currently available to Soundkeeper from Ecology's publicly available records.  Soundkeeper provides notice of its intent to sue Samson for failing to comply with all of the Level One Corrective Action requirements described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time during the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed in Tables 1 and 2 above.

**B.      Violations of the Level Two Requirements of the Permits.**

Condition S8.C of the Permits requires Samson take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.  Condition S8.A of the 2015 Permit requires that Samson implement any Level Two Corrective Action required by the 2010 Permit.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires Samson: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the 2010 Permit; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.B of the Permits. Condition S8.C.4 of the Permits requires that Samson implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than August 31st of the following year.

The Permits establish the benchmarks applicable to Samson described in Section IV.A of this notice of intent to sue letter.

Samson has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs to ensure that all points of discharge from the facility meet benchmarks (not just the sampled point of discharge), including additional structural source control BMPs, and the required summarization in the annual report each time during the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year.  As indicated in Table 1 in Section I.A of this letter, these violations include, but are not limited to, Samson's failure to fulfill these obligations for turbidity, zinc, and copper triggered by its stormwater sampling during the calendar year of 2011 and every year since.

The benchmark excursions identified in Tables 1 and 2 of this notice of intent to sue letter are based upon information currently available to Soundkeeper from Ecology's publicly available records. Soundkeeper provides notice of its intent to sue Samson for failing to comply with all of the Level Two Corrective Action requirements each and every time quarterly stormwater sample results exceeded an applicable benchmark value or were outside the benchmark range for pH for any two quarters during a calendar year, including any such excursions that are not reflected in Tables 1 and 2 above, during the last five years.

**C.      Violations of the Level Three Requirements of the Permits.**

Condition S8.D of the Permits requires Samson take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable

benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.  Condition S8.A of the 2015 Permit requires that Samson implement any Level Three Corrective Action required by the 2010 Permit.

As described by Condition S8.D of the Permits, a Level Three Corrective Action requires that Samson: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level Three Corrective Action (planned or taken) in the Annual Report required under Condition S9.B of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or it new/additional treatment BMPs will be installed.  Condition S8.D.2.b of the Permits requires that a licensed professional engineer, geologist, hydrogeologist, or certified professional in storm water quality must design and stamp the portion of the SWPPP that addresses stormwater treatment structures or processes.

Condition S8.D.3 of the Permits require that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, Samson submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-240 of the Washington Administrative Code.  The engineering report must be submitted no later than the May 15 prior to the Level Three Corrective Action Deadline.  The plans and specifications and the operations and maintenance manual must be submitted to Ecology at least 30 days before construction/installation.

Condition S8.D.5 of the Permits require that Samson fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Permits establish the benchmarks applicable to Samson described in Section IV.A of this notice of intent to sue letter.

Samson has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, including the requirement to have a specified professional design and stamp the portion of the SWPPP pertaining to treatment, the required implementation of additional BMPs, including additional treatment BMPs to ensure that all points of discharge from the facility meet benchmarks (not just the sampled point of discharge), the required submission of an engineering report, plans, specifications, and an operations and maintenance plan, and the required summarization in the annual report each time during the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year.  As indicated in Table 1 in Section I.A of this letter, these violations include, but are not

limited to, Samson's failure to fulfill these obligations for turbidity, zinc, and copper triggered by its stormwater sampling during the calendar year of 2011 and again in 2015.

The benchmark excursions identified in Tables 1 and 2 of this notice of intent to sue letter are based upon information currently available to Soundkeeper from Ecology's publicly available records.  Soundkeeper provides notice of its intent to sue Samson for failing to comply with all of the Level Three Corrective Action requirements each and every time quarterly stormwater sample results exceeded an applicable benchmark value or were outside the benchmark range for pH for any three quarters during a calendar year, including any such excursions that are not reflected in Tables 1 and 2 above, during the last five years.

## V.    VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS.

Condition S9.B of the Permits requires Samson to submit an accurate and complete annual report to Ecology no later than May 15 of each year.  The annual report must include corrective action documentation as required in Condition S8.B through S8.D.  If a corrective action is not yet completed at the time of submission of the annual report, Samson must describe the status of any outstanding corrective action.  Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level 1, 2, or 3 corrective actions completed during the previous calendar year, including the dates corrective actions completed, and description of the status of any Level 2 or 3 corrective actions triggered during the previous calendar year, including identification of the date Samson expects to complete corrective actions.  Samson has violated this condition by failing to include all of the required information in the annual report it submitted for the past five years.

The annual report submitted by Samson for 2010 (submitted May 13, 2011) does not include the required information.  The report notes elevated turbidity because of unpaved site and heavy machinery, elevated zinc and copper and noted possible sources. The report claims corrective actions done in January 2011 included updating SWPPP, straw bales, silt fences, placement of rocks to reduce erosion.

The annual report submitted by Samson for 2011 (submitted on May 11, 2012) does not include the required information.  For example, the report does not describe all of the stormwater problems identified or identify the conditions triggering the need for Level Two and Level Three corrective actions.

The annual report submitted by Samson for 2012 (submitted on May 10, 2013) does not include the required information.  The report does not describe any stormwater problems or benchmark exceedances. The report does not describe the completion or status of the Level Two and Level Three corrective actions triggered in prior years. The report also fails to include the information required by Condition S8.D.4 of the 2010 Permit for Level Three Corrective Actions.

The annual report submitted by Samson for 2013 (submitted on May 5, 2014) does not include the required information.  The report claims no benchmark exceedances and does not

describe any stormwater problems. The report does not describe the completion or status of the Level Two and Level Three corrective actions triggered in prior years.

Samson failed to submit an annual report for 2014, a year in which the facility had significant benchmark exceedances and received an enforcement letter from the Department of Ecology.

The annual report submitted by Samson for 2015 (submitted April 26, 2016) does not include the required information. The report was improperly submitted as a Word document and is not signed or dated.  The report notes benchmark exceedances but does not describe any stormwater problems, causes of the exceedances or corrective actions. The report also fails to include the information required by Condition S8.D.4 of the Permits for Level Three Corrective Actions.

## VI.     VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS.

### A.     Failure to Record Information.

Condition S4.B.3 of the Permits requires Samson record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Samson collected the sample within the first 30 minutes of stormwater discharge event, an explanation of why Samson could not collect a sample within the first 30 minutes of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling.  Upon information and belief, Samson is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B.     Failure to Retain Records.

Condition S9.C of the Permits requires Samson to retain for a minimum of five years a copy of the Permits, a copy of Samson's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permits.  Upon information and belief, Samson is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VII.    PROHIBITED DISCHARGES.

Condition S5.E. of the Permits prohibits illicit discharges and the discharge of process wastewater.  Appendix 2 of the Permits defines "illicit discharges" to include "any *discharge that is not composed entirely of *stormwater* except (1) discharges authorized pursuant to a separate NPDES permit, or (2) conditionally authorized non-stormwater discharge identified in Condition S5.D."  Appendix 2 of the Permits defines stormwater as "that portion of

precipitation that does not naturally percolate into the ground or evaporate, but flows via overland flow, interflow, pipes, and other features of a stormwater drainage system into a defined surface water body, or a constructed infiltration facility." In contrast to stormwater, Appendix 2 of the Permits defines leachate as "water or other liquid that has percolated through raw material, product, or waste and contains substances in solution or suspension as a result of the contact with these materials," and process wastewater as "any non-stormwater which, during manufacturing or processing, comes into direct contact or results from the production or use of any raw material, intermediate product, finished product, byproduct, or waste product."

On information and belief, Samson has violated and continues to violate these conditions due to its non-stormwater discharges from the Facility. These non-stormwater discharges from the Facility may include, but are not limited to, track-out from vehicles leaving the site and discharges of wash water from the wheel wash and/or other equipment washing areas.

## VIII.   REQUEST FOR SWPPP.

Pursuant to Condition S9.F of the 2015 Permit, Soundkeeper hereby requests that Samson Inc. provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs within 14 days. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Samson fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.F of the 2015 Permit, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

## IX.   CONCLUSION.

The above-described violations reflect those indicated by the information currently available to Soundkeeper. These violations are ongoing. Soundkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $37,500 per day for each violation. In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 USC § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Soundkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. Soundkeeper intends, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Samson under Section 505(a) of the Clean Water Act for the violations described herein.

Soundkeeper is willing to discuss effective remedies for the violations described in this letter and settlement terms during the 60-day notice period.  If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within ten (10) days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly.  We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Very truly yours,

SMITH & LOWNEY, PLLC

By: _____

Knoll D. Lowney
Meredith A. Crafton

cc:    Gina McCarthy, Administrator, U.S. EPA
       Dennis McLerran, Region 10 Administrator, U.S. EPA
       Maia Bellon, Director, Washington Department of Ecology
       Registered Agent, Gerald Morgan, 6361 1st Ave S, Seattle WA 98108